IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 27 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

ROBERT MURRAY,

    Plaintiff

v.

GEORGE G. BRANTLEY
ANN B. HARRIS
ALAN G. POOLE
CHRISTOPHER HANSARD
DAVID EMERSON, and
JULIE ADAMS JACOBS

    Defendants.

CASE NO.

1:25-CV-6130

Related case: Murray v Vic Brown Hill, et.al.
Cobb County Superior Court Case No. 2310446

## VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Comes now Plaintiff ROBERT MURRAY, without representation, and files this *Verified Emergency Motion for Temporary Restraining Order (TRO) and Preliminary Injunction,* pursuant to Fed. R. Civ. P. 65 showing this Court:

### I. INTRODUCTION AND RELIEF REQUESTED

1.    Plaintiff Robert Murray respectfully moves for an emergency temporary restraining order and preliminary injunction under Fed. R. Civ. P. 65 to halt all proceedings in his state court cases scheduled for November 12, 2025, and

1

thereafter. This Court's immediate intervention is necessary to prevent imminent and irreparable constitutional harm: Plaintiff faces a coercive hearing before Senior Judge George Grant Brantley, a judge who is expressly disqualified by court order, whose prior conduct was the factual basis for that disqualification, and whose appointment constitutes deliberate retaliation against Plaintiff and attorney.

2. On December 4, 2024, the Chief Judge of Cobb County Superior Court issued a blanket Recusal Order expressly disqualifying "all Cobb County Superior Court judges and former Cobb judges now serving as senior judges" from "any further proceedings in this case." (Ex. B, December 4, 2024 Recusal Order). That order was issued under Canon 2.11 of the Georgia Code of Judicial Conduct following Plaintiff's Motion to Recuse the Entire Bench, which documented Senior Judge Brantley's threatening and intimidating conduct in an unrelated proceeding. When Defendants attempted to circumvent the order through legally erroneous actions, all eleven sitting Cobb County judges individually recused, confirming the blanket order's validity and scope. With no eligible sitting judges remaining, Defendants then unlawfully appointed Senior Judge Brantley—the very judge whose misconduct triggered the recusal—to preside over Plaintiff's cases.

3. Senior Judge Brantley's appointment violates the December 4, 2024 Recusal Order in three independent ways: (1) it directly contravenes the order's express terms disqualifying all former Cobb judges serving as senior judges; (2) it

violates Canon 2.11(A), which required Judge Brantley to disqualify himself because his own conduct formed the factual basis for the recusal motion; and (3) it constitutes unlawful retaliation against Plaintiff and his counsel for filing the recusal motion and pursuing federal civil rights claims against Judge Brantley. A disqualified judge's proceedings are coram non judice and any orders issued are void. *Mondy v. Magnolia Advanced Materials, Inc.*, 815 S.E.2d 70 (Ga. 2018).

4. The timing and coercive nature of subsequent actions reveal their retaliatory purpose. On October 21, 2025, Plaintiff's counsel, Mr. McMaster, filed a motion to withdraw because the appointment created a direct conflict of interest. Within twenty-four hours, Senior Judge Brantley issued an order specially setting a mandatory hearing for November 12, 2025, stating that the case may not be removed from the calendar. (Ex. D, Oct. 22, 2025 Order). The order coerces the appearance of Plaintiff and his counsel under threat of contempt, despite counsel's pending motion to withdraw.

5. The risk of retaliation is neither theoretical nor remote. In August 2024, Plaintiff's counsel filed a federal civil-rights complaint against Senior Judge Brantley (*McMaster v. Brantley*, N.D. Ga. No. 1:24-cv-3436). The Georgia Attorney General's Office, representing the judge, obtained dismissal in December 2024 by assuring the federal court that any injury was "speculative." That assurance has now proven false: the same judge has been installed to preside over

Plaintiff's case and is using his authority to retaliate against both Plaintiff and his counsel.

6. Plaintiff faces an untenable, coercive situation engineered by the unlawful appointment of Senior Judge George Grant Brantley. The November 12, 2025 hearing places both Plaintiff and his counsel in direct jeopardy. If Judge Brantley recognizes the conflict and allows counsel to withdraw, Plaintiff will be left unrepresented and unable to obtain new counsel before the hearing. If he refuses to grant withdrawal, counsel must appear before a judge with whom he has an active conflict of interest, exposing both attorney and client to retaliatory treatment. Either outcome serves the same purpose—punishing Plaintiff for his mother's affidavit and punishing counsel for filing a federal civil-rights complaint against Judge Brantley.

7. The dynamic is unmistakably retaliatory. Judge Brantley's actions ensure that whatever course Plaintiff or his counsel takes results in harm: withdrawing leaves Plaintiff defenseless; appearing invites contempt, sanctions, or incarceration. The judge's power to compel appearance "for any reason" (Exhibit D) transforms the hearing into a coercive trap rather than a judicial proceeding. The retaliation extends to counsel, who risks professional harm for continuing representation, and to Plaintiff, whose livelihood and parental rights are imperiled

by a disqualified judge acting with evident bias. "**Where disqualification exists, a litigant is entitled to halt the [proceeding].**" *Tumey v. Ohio*, 273 U.S. 510 (1927).

8. This is not speculation. Judge Brantley has already demonstrated hostility toward Plaintiff's family and counsel, and his appointment—ten months after the Attorney General assured the federal court that he posed no further threat—shows deliberate disregard of those assurances. Federal intervention is the only safeguard against this orchestrated retaliation. Without it, Plaintiff faces a choice between contempt, loss of counsel, and irreversible damage to his career and constitutional rights.

9. **Requested Relief:**

   1. Issue a TRO prohibiting Senior Judge Brantley from presiding over any case involving Plaintiff, including the November 12, 2025 hearing in *Murray v. Hill*, Cobb Superior Court No. 23-1-04461 and *Murray v Smith*, Cobb Superior Court No. 19-1-4306-56;

   2. Enjoin Defendants from conducting or scheduling any proceedings in Plaintiff's state court cases before Senior Judge Brantley;

   3. Declare that the December 4, 2024 Recusal Order remains valid and binding and prohibits Senior Judge Brantley from presiding over Plaintiff's cases; and

5

4. Schedule an immediate hearing on Plaintiff's request for preliminary injunction.

## II. JURISDICTION AND VENUE

9.  This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983, and authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202. This action seeks to prevent and redress violations of rights secured by the United States Constitution and federal law by state officials acting under color of law. Venue is proper under 28 U.S.C. § 1391.

## III. STATEMENT OF FACTS

10.  **Background.** On June 8, 2023, Plaintiff filed *Murray v. Hill*, a legal malpractice case, in Cobb County Superior Court. Plaintiff proceeded without representation until January 23, 2025, when Mr. McMaster entered as counsel.

11.  **First Recusal.** Judge Harris was initially to the case but recused on June 16, 2023 having presided over the underlying matter giving rise to the malpractice claim.

12.  **Senior Judge Brantley's Conduct**. On June 17, 2024 and August 2, 2024, Senior Judge Brantley presided over unrelated hearings where he displayed hostility toward courtroom observers Plaintiff's counsel, and Plaintiff' mother. These incidents were documented in sworn affidavits. (Ex. E, Motion to Recuse Entire Bench.)

13.     **Motion to Recuse**. On June 25, 2024, Plaintiff filed a Motion to Recuse the Entire Bench of the Cobb County Superior Court, citing Judge Brantley's conduct and systemic impartiality concerns.

14.     **Recusals Following the Motion**. On August 24, 2024 and October 31, 2024 two Cobb judges voluntarily recused, referencing the same incidents described in the motion to recuse.

15.     **The December 4, 2024 Recusal Order**. On December 4, 2024, Chief Judge Poole issued a Recusal Order pursuant to Canon 2.11, recusing "all Cobb County Superior Court Judges and former Cobb judges now serving as senior judges" from "any further proceedings in this case." (Ex. B, December 4, 2024 Recusal Order).  That order has never been vacated or modified.

16.     **Attempts to Circumvent the Recusal Order:** Defendants Emerson and Jacobs attempted to circumvent the Recusal Order by first limiting it to the recusal motion only—an action inconsistent with Uniform Superior Court Rule 25.3 that would render the order meaningless—and then declaring the Recusal Order "moot."

17.     **Judge Jacob's Recusal:** Defendant Jacobs later recused after her calendar clerk improperly modified a court agenda, prompting Mr. McMaster to file a federal civil rights lawsuit (*McMaster v. Smith*, N.D. Ga. No. 1:25-cv-4077)

7

18. **Individual Judicial Recusals:** The remaining Cobb judges who had not yet recused, then sequentially, after assignment, entered individual orders of recusal until all eleven sitting Cobb County Superior Court judges have now recused, confirming the validity of the blanket Recusal Order.

19. **McMaster's Federal Lawsuit Against Judge Brantley.** In August 2024, Mr. McMaster filed a federal civil rights lawsuit against Senior Judge Brantley (*McMaster v. Brantley*, N.D. Ga. No. 1:24-cv-3436). The GA Attorney General's Office, representing Judge Brantley, obtained dismissal in December 2024 by arguing that any harm from Senior Judge Brantley was 'speculative.'

20. **Judge Brantley's Appointment.** Despite the Recusal Order and these representations to the federal court, Defendants Harris and Hansard arranged the October 3, 2025 appointment of Senior Judge Brantley, the very judge whose conduct prompted the original recusal motion, to preside over the case of McMaster's client. (Ex. C, Order of Appointment)."

21. **The Coercive November 12 Hearing**. On October 21, 2025, Mr. McMaster filed a motion to withdraw due to the conflict. Within 24 hours, Senior Judge Brantley issued an order specially setting a mandatory hearing for November 12, 2025, stating the case "may not be removed from the calendar for any reason." (Ex. D, Order Setting Hearing).

8

22. **Imminent Harm.** Plaintiff, a commercial pilot, faces career-ending consequences if subjected to contempt or sanction, including loss of upgrade training beginning November 25, 2025—just 13 days after the hearing. (Ex. A, Murray Decl.).

## IV. LEGAL STANDARD

24. A TRO may issue where specific facts show immediate and irreparable injury will occur before the opposing party can be heard. Fed. R. Civ. P. 65(b)(1). The movant must show: (1) likelihood of success; (2) irreparable injury; (3) balance of harms favors relief; and (4) the injunction serves the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

## V. ARGUMENT

### A. Likelihood of Success on the Merits

25. **Due Process – Right to an Impartial Tribunal.** The December 4, 2024 Recusal Order remains valid. Appointing Senior Judge Brantley violates that order and constitutional guarantee of a neutral tribunal. *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) (every person is entitled to an impartial and disinterested tribunal in both civil and criminal cases); *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.").

26. **Mandatory Self-Disqualification – Canon 2.11 and Due Process.** Under Canon 2.11(A), a judge *shall disqualify* himself or herself where

9

impartiality might reasonably be questioned. Accepting this appointment despite prior bias violates both the Canon and the Due Process Clause. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009) (Due Process Clause violated when a judge fails to recuse in circumstances creating a serious, objective risk of actual bias); *In re Murchison*, 349 U.S. 133, 136 (1955) (due process is violated when a judge acts in a case in which his impartiality can reasonably be questioned); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927) (due process guarantees an impartial judge, and where disqualification exists, proceedings must be halted).

27. **Retaliation for Protected Activity.** Reassigning a disqualified judge less than a year after counsel's federal civil-rights complaint constitutes retaliation for exercising the First Amendment right to petition the courts. *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983) (First Amendment protects the right to petition courts for redress and bars retaliation for exercising that right); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (access to courts is a fundamental aspect of the right to petition).

28. **Extraordinary Circumstances Support Federal Jurisdiction.** All eleven sitting Cobb judges recused, confirming systemic partiality. Federal abstention doctrines do not bar independent constitutional claims where no final state judgment exists. (*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (Rooker–Feldman does not apply where the federal action does

not seek appellate review of a state judgment and the alleged injuries are independent of it); *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (abstention is the exception, not the rule, and federal courts have a "virtually unflagging" obligation to exercise jurisdiction).

### B. Irreparable Injury

29. Plaintiff faces immediate and irreparable harm if the November 12, 2025 hearing proceeds. On October 21, 2025, Mr. McMaster filed a motion to withdraw due to the conflict created by Judge Brantley's appointment. Within 24 hours, Judge Brantley issued an order requiring all parties to appear on November 12, forbidding removal of the case "for any reason," and directing counsel to seek deference from conflicting courts—effectively compelling appearance under threat of contempt while refusing to rule on the withdrawal motion. (Ex. D, Order Setting Hearing).

30. The risk is not speculative. In August 2024, Mr. McMaster filed a federal civil rights lawsuit against Judge Brantley (*McMaster v. Brantley*, N.D. Ga. No. 1:24-cv-3436). The GA Attorney General's Office, representing Senior Judge Brantley, successfully argued for dismissal on the basis that any future harm from Judge Brantley was "speculative." Less than a year later, Judge Brantley has been appointed to preside over Plaintiff's case and is using his authority to retaliate against both Plaintiff and his counsel, Mr. McMaster.

11

31. Plaintiff's fear of retaliation is well-founded. Sworn affidavits describe the judge's prior threats toward Plaintiff's mother and counsel. Any contempt or sanction would cause immediate termination of Plaintiff's employment as a commercial pilot and prevent his attendance at scheduled upgrade training (Ex. A, Murray Decl. ¶ 5). The retaliation also threatens Plaintiff's custody proceedings involving his minor daughter, implicating fundamental liberty interests. *Troxel v. Granville*, 530 U.S. 57 (2000).

32. The timeline itself amplifies the harm. With the hearing set for November 12 and training beginning November 25, there is no practical opportunity for state appellate review or replacement counsel. Any contempt, sanction, or adverse ruling would have immediate and irreversible consequences for Plaintiff's liberty, livelihood, and constitutional rights. (*Ex. A ¶ 6.*)

33. Loss of the right to an impartial tribunal constitutes irreparable harm per se. *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980). Once a proceeding occurs before a disqualified judge, the resulting orders are void and the constitutional injury cannot be undone retroactively. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

**C. Balance of Harms**

34. Defendants suffer no cognizable harm from complying with the December 4, 2024 Recusal Order, or from compliance with Canon 2.11(A).

Compliance restores lawful process. Plaintiff, by contrast, faces the loss of constitutional protections, livelihood, and liberty.

### D. Public Interest

35. The public interest is best served by enforcing judicial recusal orders, preventing retaliation, and maintaining confidence in the judiciary. Ensuring neutrality sustains the rule of law.

## VI. INADEQUACY OF STATE COURT REMEDIES

36. **State remedies cannot provide timely or effective relief.** The Georgia appellate process offers no mechanism to halt the imminent November 12 hearing or review the unlawful appointment before harm occurs. Writs of prohibition are rarely entertained and typically remanded for post-judgment review. Administrative remedies through the Judicial Qualifications Commission or the Attorney General's Office have proven unresponsive or conflicted. Federal intervention is therefore the only effective remedy.

## VII. NOTICE AND CERTIFICATION

37. Pursuant to Fed. R. Civ. P. 65(b), Plaintiff certifies that no prior notice has been given and the immediate threat of irreparable harm. Defendants will be served concurrently upon filing.

   a. **Efforts to Give Notice.** Due to the emergency nature of this motion and the short time before the November 12 hearing, Plaintiff has not provided

13

advance notice to Defendants but will serve this motion and complaint simultaneously with filing.

b. **Reasons Notice Should Not Be Required**:

- The hearing is less than three weeks away, and Plaintiff's upgrade training begins November 25, requiring immediate relief;
- Defendants are state judicial officers who have shown a pattern of retaliation and obstruction;
- Advance notice could allow Defendants to accelerate proceedings or take retaliatory action before this Court can intervene;
- Plaintiff faces imminent risk of contempt or incarceration if the November 12 hearing proceeds; and
- The requested relief merely requires compliance with the December 4, 2024 Recusal Order and Canon 2.11(A) governing judicial disqualification.

## VIII. CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court:

1. Issue an immediate TRO prohibiting Senior Judge Brantley from presiding over any case involving Plaintiff, including the November 12 hearing in *Murray v. Hill*, Cobb Superior Court No. 23-1-04461 and *Murray v Smith*, Cobb Superior Court No. 19-1-4306-56;

2. Enjoin Defendants from conducting or scheduling any proceedings in Plaintiff's state court cases before Senior Judge Brantley;

3. Declare that the December 4, 2024 Recusal Order remains valid and binding and prohibits Senior Judge Brantley from presiding over Plaintiff's cases; and

4. Schedule an immediate hearing on Plaintiff's request for preliminary injunction.

Submitted this 27th day of October, 2025.

This submission was prepared using Times New Roman 14 point font in compliance with L. Rule 5.1(C).

Exhibits include A; Declaration, B. December 4, 2024 Recusal Order; C. October 3, 2025 Order of Appointment, D. October 22, 2025, Order Setting Hearing and 5. June 25, 2024, Motion to Recuse.

Respectfully submitted

_____
Robert Murray
Plaintiff, Without Representation

ADDRESS US MAIL TO:
5775 Cains Cove Road
Cumming, GA  30041

3871 Wyntuck Court
Kennesaw, GA 30152
Cell: 770-490-3020
pilotRmurray@gmail.com