**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ROBERT MURRAY,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER HANSARD, et al.,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CIVIL ACTION FILE<br>NO.: 1:25-cv-06130-WMR |

**DEFENDANT CHRISTOPHER HANSARD'S BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Plaintiff Robert Murray ("Plaintiff") brings this § 1983 action against Defendant Christopher Hansard, the Court Administrator for Cobb County Superior Court ("Defendant Hansard"), along with two sitting Cobb County Superior Court judges and two retired senior Georgia Superior Court judges, seeking a series of declaratory judgments and injunctive relief aimed at dictating which judge presides over his state court case. (Doc. 1 at p. 3 and p. 19).

The *Younger* abstention doctrine should bar this action, thereby protecting the state court system from the type of federal interference Plaintiff seeks here. Plaintiff has not, and cannot, overcome the strong presumption that challenges to judicial conduct and courtroom decisions, including the

recusal decisions at issue in this case, should be addressed through state court mechanisms rather than federal civil rights litigation. Accordingly, this Court should abstain from exercising its jurisdiction to interfere with ongoing state proceedings in this narrow circumstance.

However, even if this Court exercised its jurisdiction to consider Plaintiff's claims (which it should not), the claims against Defendant Hansard stumble out of the gate. Defendant Hansard has been sued only in his official capacity; therefore, the claims are actually claims against Cobb County. Because Plaintiff has not pled a viable *Monell* claim, he has failed to state a claim against the County. For this reason, and those discussed below, Plaintiff's claims against Defendant Hansard are subject to dismissal for failure to state a claim.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Hansard is the Court Administrator for Cobb County Superior Court. (Doc. 1 at ¶ 15). Plaintiff's Complaint makes clear that he is suing Defendant Hansard in his official capacity only. (Id.).

Overall, the Complaint alleges a "coordinated conspiracy" between the named judges and Defendant Hansard "to deprive Plaintiff of his constitutional rights to due process, an impartial tribunal, and freedom from retaliation for exercising his First Amendment right to petition for redress of grievances and access to the courts." (Doc. 1 at ¶ 6). Plaintiff claims the

conspiracy was an effort to appoint Defendant Judge Brantley to his case – after the entire Cobb County Superior Court bench and senior Cobb County judges were recused – as "apparent retaliation." (Id.)

Plaintiff alleges this retaliation was instituted due to a motion to recuse all Cobb County superior court judges (active and senior) made in *Murray v. Hill*, et al. (Doc. 1 at ¶7). Plaintiff also alleges he was retaliated against (via appointment of Judge Brantley to his case) because his former attorney, Matthew D. McMaster (representing himself *pro se*), filed a federal lawsuit filed against several judges, including Judge Brantley. (Id. at ¶8).

Plaintiff has two ongoing lawsuits in Cobb County Superior Court. (Doc. 1 at ¶22 and FN 1, respectively). The first, *Murray v. Hill, et al.*, Cobb County Superior Court Case No. 23-1-04461 (the "*Hill* suit"), is a legal malpractice action filed pro se against Vic Hill, his former attorney in his other case, a *Murray v. Smith*, Cobb County Superior Court Case No. 19-1-04306 (the "*Smith* suit"), a child custody action. (Id. at ¶22). The *Hill* suit is at the center of the allegations and relief requested in this matter. (Id. at pp. 2-3).[1]

[1] To provide the full background and procedural posture of the *Hill* lawsuit, which is incorporated by reference and central to Plaintiff's allegations, Defendant Hansard asks this Court to take judicial notice of exhibits attached hereto. See *Bilal v. Benoit*, 2025 WL 3240264 (11th Cir. 2025) (citing *Tellabs, Inc. v. Makor Issues and Rights*, *Ltd.*, 551 U.S. 308, 322 (2007)). All the attached exhibits are publicly available on the Cobb County Superior Court Clerk website, available at https://superiorcourtclerk.cobbcounty.gov.

Plaintiff alleges that, on June 17 and August 2, 2024, Defendant Judge Grant Brantley presided over hearings for unrelated, unidentified parties where Attorney Matthew McMaster and Plaintiff's Mother, Mary Murray,[2] were present and filed motions to record said hearings ("Rule 22 motions") "as members of the public." (Doc. 1 at ¶¶ 24-25). Judge Brantley then denied the requests. (Id.). On June 25, 2024, Plaintiff alleges that he then filed a motion to recuse the entire Cobb County Superior Court Bench in his own case. (Id. at ¶ 26; see also Doc. 1-1, pp. 3-10).

Judge Reynolds, who was then presiding over the *Hill* suit, recused himself after Attorney McMaster filed a federal lawsuit against several Cobb Superior Court Judges, including Judge Reynolds, for the same incidents alleged in in Plaintiff's Motion to Recuse. (Doc. 1-1 at pp. 29-30). After the case was reassigned to Cobb County Superior Court Judge Angela Brown, Plaintiff renewed his motion to recuse the entire Cobb County Superior Court bench. (See Renewed Motion, attached as Exhibit 1). Judge Brown recused. (Doc. 1-1 at pp. 31-32).

After the renewal of Plaintiff's Motion to Recuse, Defendant Chief Judge Alan G. Poole signed a Recusal Order on December 4, 2024, nunc pro tunc to

---

[2] Mary Murray is an advocate for the "Equally Present, Inc." organization and has filed Rule 22 requests to record court proceedings "at least 5 times in Cobb County Superior Court." (Doc. 1-1 at p. 13).

December 2, 2024. (Doc. 1-1, p. 28). Said Order was issued "as the motion to recuse the entire Superior Court of Cobb County bench remains pending," and formally recused all Cobb County Superior Court Judges and former Superior Court Judges from any further proceedings in this case. (Id.). It further requested the 7th District Chief Administrative Judge "select a judge outside the circuit *to hear the motion*" in accordance with Georgia U.S.C.R. 25.4(c)(3), the Rule titled "Procedure Upon a Motion for Disqualification." (Id.) (emphasis added). Defendant Judge David Emerson, a Georgia Senior Superior Court Judge, was appointed. (Doc. 1, ¶ 29).

On December 29, 2024, Plaintiff filed a Notice that he was withdrawing his motion to recuse, declaring it moot. (See Notice of Withdrawal, attached as Exhibit 2). Judge Emerson issued an order denying the withdrawal and pointed out that the Dec. 4 Order only recused Cobb judges for reviewing and ruling on Plaintiff's motion to recuse. (Doc. 1, ¶ 29; see December 30, 2025 Order, attached as Exhibit 3). After review and a scheduled hearing date, Judge Emerson denied the motion and remanded the case back to Cobb County to reassign the case "in accord with the normal process." (See January 3, 2025 Order, attached as Exhibit 4).

*Hill* was then assigned to Defendant Cobb County Superior Court Judge Julie Jacobs. Plaintiff, now represented by Matthew McMaster, filed a motion to set aside the orders issued by Judge Emerson because Plaintiff had

voluntarily withdrawn his motion to recuse. (See Motion to Set Aside Orders, attached as Exhibit 5). Judge Jacobs did so, agreeing he withdrew his motion to recuse, but also found the December 4, 2024 Recusal Order, limited to hearing the Motion to Recuse, was moot because Plaintiff withdrew said Motion. (Doc. 1, ¶30, see April 28, 2025 Order, attached as Exhibit 6). While arguing the December 4 Recusal Order was a permanent recusal of the entire Cobb County Superior Court bench, Plaintiff also filed further motions before Judge Jacobs. (See Id. at p. 4). Judge Jacobs found Plaintiff's request for her to hear his motions demanded "the opposite of recusal of Judge Jacobs." (Id.).

All pending motions in the *Hill* suit were calendared for a hearing on July 24, 2025. (See April 28, 2025 Order at Ex. 6). However, Plaintiff's attorney, McMaster, filed a federal lawsuit against Judge Jacobs' calendar clerk *the day before* said hearing was scheduled; as a result, Judge Jacobs sua sponte recused herself from the *Hill* lawsuit. (See Order of Recusal, attached as Exhibit 7). Every remaining active Cobb County Superior Court Judge followed suit. (Doc. 1 at ¶ 32).

On September 12, 2025, Chief Judge Ann Harris issued an order that (1) found all *active* Cobb County Superior Court judges had voluntarily recused from the *Hill* suit and (2) ordered Defendant Hansard, as the Superior Court Administrator, to "submit the case to the 7th Judicial Circuit Administrator for

appointment of a Superior Court Judge to hear all further matters in this case."[3] (Doc. 1-1 at p. 37).

A week later, Plaintiff's attorney McMaster filed a motion to recuse the entirety of the 7th Judicial District. (See Motion to Recuse, attached as Exhibit 8). That motion was denied. Administrative Judge John E. Niedrach held the allegations in the motion were legally insufficient to warrant recusal of any judge who had not already voluntarily recused. (See Order on Motion to Recuse, attached as Exhibit 9). On October 3, 2025, Judge Niedrach appointed Georgia Senior Judge Brantley. (Doc. 1-1 at pp. 39-40).

In his Complaint, Plaintiff alleges Defendant Hansard, in concert with Judge Harris and in spite of "the standing Recusal Order, the subsequent individual recusals, and the related federal proceedings," requested a judicial appointment from the Seventh Judicial District Administrative Office "advocating for the appointment of a senior judge who regularly services the Cobb Superior Court." (Doc. 1 at ¶ 36). Defendant Hansard is not specifically mentioned in the complaint otherwise. (See Doc. 1, generally).

[3] The Order added "[n]othing in this order shall preclude appointment of a Senior Superior Court Judge who provides routine assistance to the Judges of the Cobb Judicial Circuit." (Doc. 1-1 at p. 37). The 7th District is made up of fourteen counties of active and senior judges, spanning the Northwest corner of the state. See the 7th district website, available at www.7jad.com.

Based on these allegations, Plaintiff seeks declaratory and injunctive relief. (Doc. 1 at ¶10). Count I claims a violation of the Fourteenth Amendment's "right to a fair and impartial tribunal in judicial proceedings." (Doc. 1 at ¶48). Count II claims a violation of the First Amendment, alleging that because he filed a motion to recuse the entire bench of Cobb County and later retained counsel who had filed a federal lawsuit against Judge Brantley, he was retaliated against by the appointment of Judge Brantley to his case. (Doc. 1 at ¶¶ 57 – 58). Thus, his right to "petition for redress and access to the courts without fear of government retaliation" has been violated and he "faces ongoing constitutional injury." (Id. at ¶ 60). Finally, in Count III, Plaintiff seeks a declaration that "the December 4, 2024 Recusal Order remains valid and binding;" that "Senior Judge Brantley is disqualified from presiding over any case involving Plaintiff"; and "any appointment or action inconsistent with the Recusal Order violates Plaintiff's constitutional rights."[4] (Doc. 1 at ¶66).

## ARGUMENT

### A. Standard Governing Rule 12(b)(1) & (6) Motions

Where a defendant files a Motion to Dismiss challenging subject matter jurisdiction, said challenge can be brought pursuant to Rule 12(b)(1). *Lawrence*

---

[4] Plaintiff also includes in his Prayer a request for an order declaring all named judges disqualified from presiding over any cases where he is "a party or litigant." (Doc. 1 at p. 19).

*v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Challenges to jurisdiction under Rule 12(b)(1) come in two forms: facial attacks and factual attacks. 5*th Bedford Pines Apartments, Ltd. v. Brandon*, 262 F.Supp.2d 1369, 1374 (N.D. Ga. 2003). The two forms of jurisdictional attack "differ substantially." *Lawrence at* 1529. "Facial attacks on the complaint require the court merely to look and see if the complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion." *Id.* (internal citations omitted). Factual attacks, on the other hand, "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, [may be] considered." *Id.* (internal citations omitted). This motion serves as a facial attack under 12(b)(1).

Rule 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must "'give the defendant fair notice of what the claim is and the grounds upon which it rests . . .'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (internal citations omitted).

The Eleventh Circuit has instructed district courts to adopt a "two-step framework" when reviewing motions to dismiss for failure to state a claim. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018). The first step is to "identify conclusory allegations and then discard them – not 'on the ground

that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009The second step in [a court's] evaluation of a complaint "is to assume that any remaining factual allegations are true and determine whether those allegations state a plausible claim." *Id.* "To state a plausible claim, factual allegations must allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "A facially plausible claim must allege facts that are more than merely possible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Iqubal*, 556 U.S. at 678).

### B. This Court Should Decline Jurisdiction Because the Claims Fall Squarely Within the Younger Abstention Doctrine

Plaintiff's claims fall squarely within the *Younger* abstention doctrine, which cautions federal courts about interfering in state court proceedings in certain circumstances.[5] *Younger v. Harris*, 401 U.S. 37 (1971). The doctrine

[5] "Whether ... abstention should be raised under Rule 12(b)(1) or 12(b)(6) is the subject of some dispute." *Southern-Owners Insurance Company v. Saint Sophia Greek Orthodox Community*, 2020 WL 9218317 (S.D. Fla. 2020) (quoting *Parker v. Judicial Inquiry Comm'n of the State of Ala.*, 212 F. Supp. 3d 1171, 1174 n.1 (M.D. Ala. 2016)); *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, FN 3 (1998) (the Court noted that *Younger* abstention questions are treated as "discretionary jurisdictional questions"). Here, the analysis is the same whether seen as a discretionary jurisdictional question facing a facial attack or reviewed as a sufficiency-of-the-claims challenge. *Sutton v. Marshall*, 423 F. Supp. 3d 1294, 1296 (N.D. Ala. 2019)

was extended to civil proceedings in *Middlesex County Ethics Committee v. Garden State Bar Assoc.*, where the Court held that "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." 457 U.S. 423 (1982). In this case, Plaintiff's claims are specific to recusal decisions – and orders issued by several judges regarding recusal – and involve important state interest in the judicial functioning of the courtroom.

**1. Recusal decisions are orders uniquely in furtherance of a state court's ability to perform its judicial functions.**

Under *Younger* and its progeny, there are three categories of cases where a federal court should not intervene. Those categories are "(1) state criminal prosecutions, (2) civil enforcement proceedings akin to criminal prosecutions, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state court's ability to perform their judicial functions." *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 367-368 (1989). This case would fall into the third category.

Under the third category, "[f]or abstention to be triggered, (1) the federal injunction must create an undue interference with state proceedings, and (2) the state proceedings at issue must involve certain orders that are uniquely in

(citing *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271, 1279 (2009).

furtherance of the state courts' ability to perform their judicial functions." *Shapiro v. Ingram,* 207 Fed. App'x. 938, 939 (11th Cir.2006) (internal citation omitted). The decision to grant or deny a recusal order is within the judicial functions of state court judges. *Shapiro,* 207 Fed. App'x at 940; see also *Greene v Raffensberger*, 599 F. Supp.3d 1283, 1302 (N.D. Ga. 2022).

**2. Because this case satisfies the *Middlesex* factors, this Court should abstain from asserting jurisdiction in this case.**

Because Plaintiff's claims fall within a category of cases where this Court *could* abstain, the Court must consider the *Middlesex* factors to determine whether the Court *should* abstain. *Greene,* 599 F. Supp. 3d 1283, 1298 (N.D. Ga. 2022)(citing *Barone v. Wells Fargo Bank, N.A.*, 709 F. App'x 943, 948 (11th Cir. 2017)). The *Middlesex* factors ask the district court to evaluate if the claims "(1) constitute an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges." *Id.* (internal citations omitted). When the answer to these questions is "yes," the federal court should abstain from interfering in the state court proceeding.

Here, the answer is easily "yes" to all three *Middlesex* factors. First, the *Hill* case is undisputably an on-going state court case. Second, there is a significant state interest in allowing the state court judiciary to decide matters that concern the functioning of the courtroom, including determining how a

case is assigned to a judge and how recusal is determined individually and when deciding recusal of other judges. Finally, Plaintiff can – and has had the opportunity to – raise any federal challenges in state court, and Plaintiff has not alleged any reason the state court judicial review process could not adequately apply federal constitutional principles to his case. "Both state courts and federal courts have the authority and the duty to enforce the federal Constitution." *Butler v. Alabama Judicial Inquiry Com'n.*, 245 F.3d 1257, 1260 (2001) (*Younger* prevented federal court from interfering in pending disciplinary proceedings where a state court remedy was available). Where there is an adequate opportunity for judicial review of federal constitutional claims, as there is here, district courts should abstain from exercising jurisdiction. See *Johnson v. Boggs*, 2006 WL 8553677 (N.D. Ga. 2006) (citing *Pompey v. Broward County*, 95 F.3d 1543, 1546 (11th Cir. 1996).

As stated in *Johnson*,

> Neither federal district courts nor federal courts of appeals may usurp the authority and function of the Supreme Court and state appellate courts to review state court proceedings. The state courts are courts of equal dignity with all of the federal "inferior courts" ... and state courts have the same duty to interpret and apply the United States Constitution as we do. If the state courts err in that respect, the remedy lies in review by the Supreme Court ....
>
> Federal "inferior courts" have no more business issuing supervisory injunctions to safeguard federal constitutional rights in state court proceedings than state courts have issuing such injunctions to safeguard federal constitutional rights in federal court proceedings.

*Id.*, *6 (quoting *Pompey*, 95 F.3d at 1550).

Plaintiff has not appealed any recusal order that he alleges violated his constitutional rights or moved for Judge Brantley to be removed from his case. Instead, he asks this Court to supervise state court judges and state court administration, which it should not do. As the district court held in *Stegman v. Superior Court Stone Mountain Judicial Circuit*:

> To the extent [a] [Plaintiff] believes they have been mistreated in state court, they may seek to assert their constitutional claims and defenses in the state court system and its appeal processes, including appeals to the Georgia Court of Appeals, and ultimately including petitioning the Georgia Supreme Court and United States Supreme Court for certiorari. The state court system is able to fully consider those constitutional issues.

2008 WL 11322870, *5 (N.D. Ga. 2008) (internal citations omitted).

**3. Plaintiff's claims do not fall into any exception to the *Younger* Abstention.**

Even after this review, a federal district court could consider exercising jurisdiction if (1) "the state proceeding was initiated in bad faith or for the purpose of harassment"; (2) the challenged statute is "flagrantly and patently unconstitutional"; or (3) "other extraordinary circumstances render abstention inappropriate." *Greene v Raffensberger*, 59 F. Supp.3d 1283, 1298 (N.D. Ga. 2022) (quoting *Middlesex*, 457 U.S. at 437).

While Plaintiff concludes bad faith occurred in the appointment of Judge Brantley (Doc. 1 at ¶43), that conclusion is not supported by his alleged facts.

Plaintiff argues that because Judge Brantley was the judge that "prompted the recusals," his appointment (by an outside judge) "demonstrates deliberate bad faith." (Doc. 1 at ¶43). Plaintiff's specific factual allegations of bias against Judge Brantley can be summarized as (1) Brantley's "hostile" demeanor in court and rulings made in unrelated cases where he was not a party, and (2) Plaintiff's attorney's filing a pro se federal lawsuit against several judges, including Judge Brantley, who was later dismissed from that lawsuit. Neither of these allegations infer a bias *against Plaintiff*, let alone indicate any bad faith that should move this Court to interfere in the underlying state court case. In other words, this court would have to infer bad faith in the actions of multiple Cobb Superior Court Judges, a county court administrator, Georgia State senior judges, and an outside administrative judge who issued orders regarding recusal and judicial appointment in Plaintiff's state court case from only the Plaintiff's conclusions about the demeanor of – and legal decisions made by – the most current appointed judge based on an unrelated case.

Here, each active Cobb County superior court judge recused voluntarily. The case was reassigned until each eligible judge had reviewed and recused for various individual reasons. Plaintiff withdrew his Motion to Recuse on December 29, 2024; there was no outstanding Motion to Recuse. The September 12, 2025 Recusal Order requesting the appointment of a superior court judge noted the orders of recusal from the active judges but also noted no

orders of recusal from any Senior Superior Court Judges. The Order did not request a specific judge. Nor did the Order appoint Judge Brantley. While Plaintiff *concluded* that the language in the order advocated for Cobb County senior judges, no alleged facts support this conclusion. Nor does he provide facts that link Judge Brantley's appointment by the 7th Circuit Administrator, a separate state judicial body, to this alleged conspiracy. Plaintiff does not allege any facts that would establish bad faith or create an inference of bad faith against him from the outside appointment of Judge Brantley.

Ultimately, Plaintiff just does not like the appointment Judge Brantley to the *Hill* case. Instead of filing a Motion to Recuse Judge Brantley in that case and providing reasons sufficient under Georgia recusal law, Plaintiff asks this Court to interfere in a state court proceeding and overturn the appointment of a state-appointed superior court judge and take control of the recusal and appointment process in the *Hill* suit – and any case where he might be a party - to ensure he gets a judge he approves of. Further, Plaintiff wants this Court to direct Judge Brantley to recuse himself, and direct the 7th District Court Administrator, who is not a party here, to reappoint the case, effectively telling state court judges how to perform their judicial functions. Doing what Plaintiff asks would make this court an "overseer" of state court and courtroom administration, which is the result *Younger* and its progeny intended to avoid. *Shapiro v. Ingram,* 207 Fed. App'x. 938, 939 (11th Cir.2006).

For these reasons, this Court should abstain exercising jurisdiction over Plaintiffs claims.

**C. If the Court Does Not Abstain from Hearing This Case, the Court Should Exercise Its Discretion to Dismiss Plaintiff's Claims Against Defendant Hansard for Failing to State a Claim.**

Should this Court decide to exercise its jurisdiction over Plaintiff's claims against Defendant Hansard, the Court should dismiss the claims as a matter of law because Plaintiff has failed to state a viable claim against Defendant Hansard in his official capacity.

**1. Plaintiff's official capacity claims against Defendant Hansard are claims against Cobb County.**

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Yeldell v. Cooper Green Hosp.*, 956 F.2d 1056, 1060 (11th Cir. 1992) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). "[A] suit against a person in his official capacity is a suit against the government entity." *Taylor v. Fulton County*, 2011 WL 13269786 at *2 (N.D. Ga. 2011). *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("no need" to name local government employees because the entity can be sued). Plaintiff's official capacity claims against Defendant Hansard are, in reality, claims against Cobb County.

**2. Plaintiff's Complaint fails to allege sufficient facts to plead a plausible § 1983 claim against Cobb County.**

*i. Plaintiff's claims are governed by Monell.*

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 689 (1978), the United States Supreme Court held that local government entities are "persons" subject to liability under § 1983. *Monell* and its progeny, however, have "placed strict limitations on municipal liability under section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

A county can be liable under section 1983 "only for acts for which the local government is actually responsible." *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir. 2001) (*en banc*). "A county's liability under § 1983 may not be based on the doctrine of respondeat superior." *Grech v. Clayton, County, Ga.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003). To impose § 1983 liability on a local government entity, a plaintiff must allege facts showing "(1) that his or her constitutional or federal statutory rights were violated; (2) that the local government entity had a custom or policy that constituted deliberate indifference to that federal right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

A plaintiff may show the existence of a policy by identifying either (1) "an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through repeated acts of a final policymaker for the county." *Grech*, 335 F.3d at 1329-30. Plaintiff "must show that a county has a custom or practice of permitting [the federal violation] and that the county's

custom or practice is the 'moving force [behind] the constitutional violation.'" *Id.* at 1330 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

Unlike the State, which is *not* a "person" under § 1983, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989), a county *is* a "person" under § 1983; however, the claims are not viable if they do not allege the existence of a county policy or custom. *Grech*, 335 F.3d at 1329-30.

Plaintiff has not alleged the existence of any Cobb County policy or custom that violated his constitutional rights, thus, his claims against Defendant Hansard fail.

*ii. Cobb County cannot be held liable Under § 1983 because it has no legal control over the Courts.*

"[L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1292 (11th. Cir. 1998). The Georgia Constitution makes clear that counties have no legal control over the courts. The Home Rule Amendment to the Georgia Constitution sets forth eight exclusions to counties' home rule powers where counties have no legal authority to make policy. Exception 7 of the Home Rule Amendment specifically prohibits counties from exercising authority over "actions affecting any court or the personnel thereof." Ga. Const. of 1983, art. IX, § 2, ¶ I(c)(7).

The Eleventh Circuit has ruled that under this exclusion to home rule powers, counties do "not have final policymaking authority over the courts and cannot be subject to § 1983 liability in relation to the courts' actions." *Higdon v. Tusan*, 746 Fed. Appx. 805, 815 (11th Cir. 2018) (citing Ga. Const. art. IX, § 2, ¶ I(c)(7)). In *Higdon*, the Court affirmed the dismissal of a plaintiff's official capacity claim against a county commissioner alleging violations of his constitutional rights related to the handling of his divorce litigation because the exclusion in the Home Rule Amendment deprived the county of authority to control the courts or court personnel.

In *Bullock v. Paris*, 2024 WL 1050098 (N.D. Ga. 2024), *aff'd* 2024 WL 4717950 at *7 (11th Cir. 2024), this Court cited to *Higdon* and dismissed a *Monell* claim asserted against a county commissioner based on an allegation that the commissioner had instructed the Clerk of Court to not accept the plaintiff's documents for filing: "Gilmer County cannot be held liable for the actions of court personnel. The Eleventh Circuit has held that under the Georgia Constitution, a local county has no control over the courts or court personnel." *Bullock*, 2024 WL 1050098 at *13.

*iii. The Complaint does not allege the existence of a county policy or the acts of a final policymaker.*

Although there could be no Cobb County policies or customs related to the courts or court staff because, as discussed above, counties have no legal

authority to make such policies, the Amended Complaint notably does not allege the existence of a county policy or custom related to the alleged violations. Plaintiff's unsupported allegations about alleged misconduct by Defendant Hansard, even if deemed to be true (which they are not), cannot be a county custom because a Court Administrator is not a final policymaker for Cobb County. The County cannot be liable under § 1983 for the acts of individual employees because that would constitute liability based on respondeat superior. *Grech*, 335 F.3d at 1329-30.

**3. The Allegations Do Not State Constitutional Claims.**

Even if Plaintiff alleged a defective County custom or policy (which he has not), Cobb County could not be liable under § 1983 because Plaintiff's allegations fail to plead an underlying constitutional violation. *A.W. by and Through J.W. v. Coweta County School District*, 110 F. 4th 1309, 1317 (11th 2024). Here, Plaintiff's allegations fail to allege any conduct that constitutes a constitutional violation.

*i. § 1983 - Fourteenth Amendment Violation*

Plaintiff's Complaint alleges violations of the Due Process Clause on grounds that "Defendants deprived him of his constitutional right to due process and an impartial tribunal by assigning and permitting a judge to preside who was expressly disqualified by a standing recusal order." (Doc. 1 at ¶ 50). The Fourteenth Amendment's due process clause provides two types of

protection: (1) substantive due process; and (2) procedural due process. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994). Plaintiff's Complaint appears to assert a procedural due process claim. (Doc. 1 at ¶ 52).

"'A § 1983 action alleging a procedural due process violation requires proof of three elements: a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process.'" *Doe v. Fla. Bar*, 630 F.3d 1336, 1342 (11th Cir. 2011) (internal citations omitted). Plaintiff's Complaint has not alleged a valid deprivation of a constitutionally-protected liberty or property interest, grounded in state law, that entitles him to a benefit. *See Id.* at 1342-43. Plaintiff has no "legitimate claim of entitlement" to the judge of his choice.

Nor can Plaintiff show the existence of constitutionally inadequate process. If Plaintiff believes that the December 4, 2024 Recusal Order was violated by the appointment of Judge Brantley on October 3, 2025, his state law remedy is to file a motion to recuse Judge Brantley. He has not done so. Plaintiff could have appealed the October 3, 2025 Order appointing Judge Brantley. Again, he has not done so. The existence of state court remedies is fatal to Plaintiff's claim of a due process violation. *See Wells v. Columbus Tech. College*, 510 Fed. Appx. 893, 897 (11th Cir. 2013) ("procedural due process violations do not even exist unless no adequate state remedies are available").

The case cited by Plaintiff in Paragraph 53 of his Complaint does not indicate otherwise. *See Tumey v. Ohio*, 273 U.S. 510 (1927). In *Tumey*, a criminal defendant's due process rights were violated because a judge had a pecuniary interest in the outcome of his criminal case. Tumey, the criminal defendant, appealed to the United States Supreme Court only after the Ohio Supreme Court found no due process violation. *Tumey* is not a case about skipping the state-level remedy in favor of federal review.

Importantly, Plaintiff only alleges *one* specific allegation against Defendant Hansard. He references the September 12, 2025 Order signed by Judge Harris and states, "Defendants Harris and Hansard requested judicial appointment of a senior judge from the 7th Judicial District Administrative District advocating for the appointment of a senior judge who regularly services the Cobb Superior Court." (Doc.1 at ¶36). Yet the Order clearly shows Hansard, as the Court Administrator, was *ordered* to submit the *Hill* case to the 7th District Administrator to appoint a superior court judge. That was his alleged involvement. Hansard did not issue an Order and did not appoint Judge Brantley, nor has Plaintiff alleged Hansard had power to appoint judges at all. Plaintiff has not alleged any factual support for the conclusion that Defendant Hansard's submission of Plaintiff's case to the 7th Judicial District Court Administrator was a violation of his due process rights. He merely assumes conspiracy.

*ii. § 1983 – First Amendment Violation*

Plaintiff's Complaint contains a conclusory allegation that the "Defendants" violated his "constitutional right to petition for redress and access to the courts without fear of government retaliation" (Doc. 1 at ¶ 60) but fails to allege any facts showing Defendant Hansard did anything to affect Plaintiff's right to speech or access to the courts. To the contrary, Hansard submitted the case to the 7th District Administrator so *Hill* could proceed. Plaintiff concludes that Judge Brantley was appointed out of "retaliation," but he has not alleged facts that plausibly suggest Hansard was retaliating against Plaintiff by submitting the suit to an *entirely different* Court Administrator.

**C. The Claim for Declaratory Relief Fails.**

The dismissal of Plaintiff's § 1983 claim necessitates denial of his claim for declaratory and/or injunctive relief. *See Irwin v. Miami-Dade County Public Schools*, 2009 WL 465038 at *7 (S.D. Fla. 2009) ("Declaratory relief is inappropriate since Plaintiff fails to assert a *prima facie* case under § 1983 or state tort law.) "The Declaratory Judgment Act does not establish an independent basis for federal jurisdiction." *Aguilera v. District Director,* 423 Fed. Appx. 916, 918 (11th Cir. 2011). When a party fails to state a claim under

§ 1983, then "the court lacks the original and independent jurisdiction necessary to provide declaratory relief." Irwin, 2009 WL 465038 at *7.[6]

Plaintiff's claims for injunctive relief thus fail because they are predicated on non-viable constitutional claims. *See Stevens v. Holder*, 2015 WL 13691280 at *12 (N.D. Ga. 2015) (failure to allege sufficient facts to support a constitutional violation resulted in dismissal of claims for injunctive relief); *Stubbs v. De Simone*, 2005 WL 2429913 (S.D. N.Y. 2005) ("not necessary" to consider claims for injunctive relief when constitutional claims fail).

Injunctive relief should also be denied because equitable remedies are unavailable when there exists an adequate remedy at law. *Sibley v. Lando*, 437 F.3d 1067, 1073-1074 (11th Cir. 2005). Plaintiff can file a motion to recuse Judge Brantley in his ongoing state court cases and appeal any decisions he does not agree with.

## CONCLUSION

For all of the foregoing reasons, Defendant Hansard respectfully requests that the claims asserted against him be dismissed.

---

[6] Even when there is federal jurisdiction and the plaintiff has stated a claim, federal courts can decline to entertain a request for declaratory relief. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) (The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party, not that it must do so). "The federal courts have unique and substantial discretion in deciding whether to declare the rights of litigants." *Smith v. Casey*, 741 F.3d 1236, 1244 (11th Cir. 2014).

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing **DEFENDANT SMITH'S BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** was prepared in Century Schoolbook 13-point font in compliance with Local Rule 5.1(C).

Respectfully submitted this 29th day of December, 2025.

COBB COUNTY ATTORNEY'S OFFICE
Attorneys for Defendant Hansard

By: *<u>/s/ Melissa Tatum</u>*
MELISSA TATUM
Senior Associate County Attorney
State Bar No. 001344
LAUREN S. BRUCE
Assistant County Attorney
State Bar No. 796642
H. WILLIAM ROWLING, JR.
County Attorney
State Bar No. 617225

100 Cherokee Street, Suite 350
Marietta, Georgia 30090
770-528-4000 (phone)
770-528-4010 (facsimile)
Melissa.Tatum@cobbcounty.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I have electronically filed the foregoing **DEFENDANT HANSARD'S BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

G. Keith Pridgen, Jr.
40 Capital Square SW
Atlanta, GA 30334
kpridgen@law.ga.gov

I further certify that I have mailed, by United States Postal Service, postage prepaid, the foregoing document to the following non-CM/ECF participant:

Robert Murray
5775 Cains Cove Road
Cumming, GA 30041
*Pro-Se Plaintiff*

This this 29th day of December, 2025.

By: */s/ Melissa Tatum*
MELISSA TATUM
Senior Associate County Attorney
State Bar No. 001344

100 Cherokee Street, Suite 350
Marietta, Georgia 30090
770-528-4000 (phone)
770-528-4010 (facsimile)
Melissa.Tatum@cobbcounty.gov