# EXHIBIT A

ID# 2024-0083992-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
23104461
JUN 25, 2024 06:36 PM
Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| Robert Murray<br>Plaintiff,<br><br>vs.<br><br><br>Vic Brown Hill, individually and<br>Hill MacDonald, LLC,<br>Defendants. | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>} | CAFN: 23104461 |

**MOTION FOR RECUSAL OF THE ENTIRE BENCH OF COBB COUNTY SUPERIOR COURT**

COMES NOW Plaintiff, Robert Murray ("Plaintiff"), and files this Motion for Recusal of the Entire Bench of Cobb County Superior Court, and supporting affidavit filed as Exhibit "A", [Affidavit of Mary Murray], requesting the recusal of all Cobb Judicial Circuit Judges from Murray v Vic Brown Hill, individually and Hill MacDonald LLC (CAFN: 23104461), showing this Court as follows:

**OVERVIEW**

The matter of Murray v Vic Brown Hill, individually and Hill MacDonald LLC is a complaint for damages against Defendants. Claims include legal malpractice, breach of fiduciary duty, professional negligence, and breach of contract. Vic Brown Hill and other members of the Hill MacDonald law firm regularly practice before this Court. Further, Defendants have strong personal connections with many of the Cobb judiciary and other attorneys including opposing counsel in the underlying case, Murray v. Smith (CAFN: 191430656). The law firm, Freeman Mathis & Gary, LLP, representing Defendants also appears to have connections with the Cobb judiciary.

Furthermore, the underlying case, Murray v Smith, has been marked by numerous legal actions, allegations of judicial and attorney misconduct, and this instant case that includes a claim of attorney malpractice. Most recently, an attack on court watchdog activities has also come to the forefront.

The catalyst for this Motion to Recuse the entire bench of the Cobb County Superior Court is the threat made against Plaintiff's mother, Dr. Mary Murray, by Ms. Leonard, the wife of Superior Court Judge Robert Leonard, on June 17, 2024, as well as a pleading filed by Ms. Leonard and videos posted on the TikTok social media platform. This threat underscores the interconnected issues that necessitate this motion.

**TIMING**

Timing is proper pursuant Uniform Superior Court Rule ("USCR") 25.1 as grounds for disqualification of all Cobb Judicial Circuit Judges were made known to Plaintiff on Thursday, June 20, 2024 when Plaintiff returned from a work trip as a pilot for a commercial airline.

**RULE OF LAW**

Pursuant to the Georgia Code of Judicial Conduct Rule 1.2(a), "Judges shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary." Rule 2.3(a) states, "Judges shall perform judicial duties without bias or prejudice." Rule 2.4(b) states, "Judges shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment." Rule 2.11(A) states "[j]udges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned...." Rule 1.2 prohibits not only actual impropriety but also the appearance of impropriety. See Rule 1.2, Commentary [3] ("The prohibition against behaving

with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge. The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired.").

## SUMMARY

On June 17, 2024, Plaintiff's mother, Dr. Mary Murray (hereinafter "Dr, Murray"), was present in the courtroom for a hearing in which she had filed a Rule 22 request. Mr. Matthew McMaster, a Georgia attorney, who had also submitted a Rule 22 request, was also present.

Dr. Murray serves on the Board of Equally Present, Inc., a non-profit organization that advocates for the full and equal involvement of both fit parents in a child's life. Their mission includes educating the public about the family court processes and performing court watchdog activities. As part of their efforts to ensure transparency and accountability in the judiciary, they offer to file Rule 22 requests during court hearings. These requests permit the recording of court proceedings, primarily aimed at enhancing transparency and public access to the judicial process, thereby maintaining the openness and fairness of court proceedings. It was in this role, as a neutral observer of an open courtroom proceeding, that Dr. Murray was in attendance in Courtroom 4200 on the morning of June 17, 2024.

Prior to June 17, 2024, neither Dr. Murray nor the Plaintiff had any knowledge of the parties or attorneys present at the hearing. Nor did the Plaintiff or Dr. Murray had any prior knowledge that Ms. Leonard was married to a Cobb County Superior Court judge, nor should this have had any relevance to any Rule 22 request. Yet, Ms. Leonard made this the central theme of her objection to the Rule 22, attacking Mr. McMaster focusing on his campaign for Superior Court judge when he ran against her husband.

Dr. Murray has documented the events of June 17, 2024, in the accompanying affidavit [Exhibit "A" Affidavit of Mary Murray dated June 24, 2024.] Although the court acknowledged Mr. McMaster's Rule 22 request, the court did not acknowledge Dr. Murray's Rule 22 request. Ms. Leonard objected to the Rule 22 request and asked to cross-examine Mr. McMaster.

During Ms. Leonard's cross-examination of Mr. McMaster, she made derogatory and unfounded claims including referencing Dr. Murray as a member of Mr. McMaster's 'Rule 22 Entourage.' In a pleading, "Objection to Notice of Rule 22 Request and Brief in Support Thereof," filed by Ms. Leonard at 11:33 am on June 17, 2024, in Lowe v Lowe (CAFN: 23-1-05442), Ms. Leonard labeled those who request Rule 22's as "'child custody conspiracy theorists' who harass members of the Bar and the Courts by recording judicial proceedings." This kind of attorney bullying underscores the need for public participation in court proceedings and constitutes inappropriate and targeted name-calling.

Later that morning, while Dr. Murray was sitting next to Mr. McMaster on a courthouse hallway bench, Ms. Leonard walked past and threatened her, stating she should "watch out who she associates with" [Exhibit "A" Affidavit of Mary Murray]. As the wife of a Superior Court Judge, Ms. Leonard was implicitly warning Dr. Murray that she has the ability to influence Cobb County Superior Court judges and potentially impact the outcomes of court cases. This suggestion raises serious concerns about judicial impartiality and certainly gives the appearance of impropriety.

On June 18, 2024, the day following, Ms. Leonard posted a series of four videos on the social media platform, TikTok:

> "Story Time – I am being Harassed by a Custody Crazy." Posted under TikTok account attykkl on June 18, 2024. URL: https://www.tiktok.com/@attykkl/video/7381861349493755182 [8:26 minutes].

> "Story Time Part 2– I am being Harassed by a Custody Crazy." Posted under TikTok account attykkl on June 18, 2024. URL: https://www.tiktok.com/@attykkl/video/7381871776462081322 [8:50 minutes].
>
> "Story Time Part 3– I am being Harassed by a Custody Crazy." Posted under TikTok account attykkl on June 18, 2024. URL: https://www.tiktok.com/@attykkl/video/7381876506240339243 [7:25 minutes].
>
> "Part 4 – I am being Harassed by a Custody Crazy." Posted under TikTok account attykkl on June 18, 2024. URL: https://www.tiktok.com/@attykkl/video/7382000927412292910 [9:14 minutes].

Notwithstanding that the videos are disconcerting and disturbing, the first video in the series is of particular importance to this Motion to Recuse. Ms. Leonard states,

> "So lawyers, you know, I think this is something that people don't understand. About lawyers and judges. Judges are lawyers, and so judges used to practice law, like with their friends and with the Bar.
>
> And we have a community. And so in the community that you practice in, it's common for you to know and be friends with a judge.
>
> But, you know, I don't know the ones that practice criminal law because they never. You know, I've never really come across them in, like a social setting or in like a work setting, but if they ever practiced family law like I knew them.
>
> I think that the public thinks that there's like something like corrupt, about that. I don't really understand it.
>
> But part of our job is to know judges and know what they're going to do because they decide our cases. So like if I know a judge has two kids and that judge shares 50/50, that's going to help me tell my client, hey, you know, this judge might be open to 5050 because they have 50/50 themselves.
>
> Knowing things about judges helps us kind of gauge as far as settlement purposes like what might happen in court so that we can advise our clients. So, I feel like it's very important to know judges and I think most lawyers agree with that.
>
> There's just some out there that are too socially incapable and frankly not good at their jobs. They want to call that corruption. So that's an important point for where I'm going."

According to the foregoing statements made by Ms. Leonard, it appears that judges in the Cobb County Superior Court rule based on personal bias and personal connections rather than adhering to the rule of law. This practice would benefit litigants who are represented by attorneys with whom the judge has a positive personal relationship. Conversely, litigants are at a disadvantage if they are represented by an attorney the judge disfavors or if they encounter a judge whose personal views are contrary to those of the litigant.

Furthermore, given Ms. Leonard's apparent hostility towards Mr. McMaster, any litigant associated with him appears to face immediate prejudice.

Under Ms. Leonard's stipulations, the outcome of a case is determined more by attorney relationships with judges than by the merits of the case itself. This further implies that judicial decisions are often made prior to the litigant's appearance in court.

In this instant case, it is evident that the Defendants and their attorneys are more capable of establishing personal relationships with the Cobb County judiciary than a self-represented litigant who is not affiliated with the legal community, either professionally or socially. According to Ms. Leonard's stipulations, this puts Plaintiff at a serious disadvantage. Plaintiff's job as a pilot does not require him to 'know judges' nor gives him the opportunity to find out what they [the judges] are going to do in advance of judicial decisions.

For example, there are pending motions in this case including a Motion to Dismiss filed by Defendants. Plaintiff's argument against Defendants' motion is based on Defendants' direct violation of Georgia statute and misrepresentation of case law. Reasonable minds could question whether the Defendants felt so confident in a ruling in their favor due to their personal connections with the judge that they comfortably and blatantly violated the law.

This issue is further complicated by campaign contributions made by the Defendants and

their law firm, Freeman Mathis & Gray, LLP to the judge presiding over this case while the case is pending. Given the insights provided by Ms. Leonard, these contributions could lead reasonable minds to conclude that Defendants and their counsel maintain personal relationships with members of the Cobb judiciary, thereby providing Defendants with an undue advantage.

Ms. Leonard, as the wife of a judge, adds another layer of concern. In today's media landscape, the influence of the actions of spouses of judicial figures is a matter of public perception, as illustrated by the examples of the wives of Supreme Court Justices Clarence Thomas and Samuel Alito. The public perceives that the actions of these spouses can influence their husbands' judicial decisions. A key distinction with this instant case, is that a Supreme Court justice is one of nine voting members on a case, whereas a single judge in the Cobb County Superior Court exercises significant discretion in judicial rulings.

Therefore, Ms. Leonard's words and actions must be taken seriously. To avoid any appearance of impropriety and to ensure fairness in the Plaintiff's case, it is essential that all judges of the Cobb County Superior Court bench recuse themselves.

## CONCLUSION

This is a complex situation involving multiple individuals within the Cobb County Superior Court judiciary. Emerging patterns indicate an interplay among members of the judiciary that directly affects matters related to the Plaintiff. Judges have a duty to uphold the independence, integrity, and impartiality of the judiciary and must avoid both impropriety and the appearance of impropriety in all their activities, as mandated by Canon 1 of the Georgia Code of Judicial Conduct. Additionally, judges are required to disqualify themselves from any proceeding in which their impartiality might reasonably be questioned (see Canon 2 of the

Georgia Code of Judicial Conduct; State v. Wakefield, 324 Ga. App. 587, 593(2)(b), 751 S.E.2d 199 (2013)).

The allegations of attorney misconduct in Murray v. Vic Brown Hill, individually, and Hill MacDonald LLC, are serious. Ms. Leonard's commentary on the Cobb judiciary implies that judicial decisions may be swayed by bias and personal connections rather than the rule of law. This has major implications in an attorney malpractice case as it undermines the integrity, impartiality, and competence required for any judge in the Cobb County Superior Court to fairly handle this case. Plaintiff files this motion for even the appearance of impropriety negatively impacts public trust in the judiciary.

The Plaintiff has a constitutionally protected right to a fair and impartial judiciary. To ensure this right is upheld, the recusal of the entire bench of the Cobb County Superior Court is necessary.

Wherefore, Plaintiff Robert Murray prays:

(a) All Cobb County Superior Court Judges voluntarily recuse from this case, or in the alternative, pursuant to USCR 25, the Chief Judge of the Cobb Judicial Circuit issue a voluntary and immediate recusal of all Cobb Judicial Circuit Judges from this case;

(b) That the case be assigned to a Superior Court Judge outside the Cobb Judicial Circuit pursuant to Georgia statutes and Superior Court rules;

(c) For such other relief as this Court deems just, equitable, and proper.

Respectfully submitted this 25th day of June 2024.

*/s/ Robert G. Murray*

Robert G. Murray
3871 Wyntuck Court
Kennesaw, GA 30152
pilotRmurray@gmail.com

**EXHIBIT A**

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| Robert MURRAY,<br><br>Plaintiff,<br><br>vs.<br><br>VIC BROWN HILL, individually and<br>HILL MACDONALD, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CAFN: 23104461 |

---

**AFFIDAVIT OF MARY MURRAY**

**PERSONALLY APPEARED** before the undersigned attesting officer authorized by law to administer oaths, Mary Murray, who after first being duly sworn, on oath deposes and says:

I.

I, Mary Murray, have personal knowledge of the facts and circumstances contained in this Affidavit. I notified Plaintiff of these facts on Thursday, June 20, 2024 when he returned from a work trip as an airline pilot.

2.

My name is Mary Murray and I am a citizen of the United States and a resident of Georgia. I am over the age of eighteen **(18)** and I am competent to testify to the facts in this affidavit. I am doing so freely and voluntarily and in the absence of any duress or legal impediment.

3.

I am filing this Affidavit in support of the Motion to Recuse the Entire Bench of the Cobb County Superior Court in this instant case, Civil Action File No. 23104461, Robert Murray vs.

Vic Brown Hill individually and Hill MacDonald, LLC, and in case, Civil Action File No. 19-1-4306-56, Robert Murray v Alice Smith.

4.

I am a Distinguished Professor of Information Systems with an international reputation for research in the areas of digital literacy and emerging technologies. I hold a Ph.D. in information systems and am a highly trained researcher. I have more than 40 years of experience and hold an extensive publication list of peer-reviewed scholarly publications. I hold the position of senior [officially called 'full'] professor at Kennesaw State University in the Department of Information Systems and Security housed in the Coles College of Business.

5.

I serve on the Board of Equally Present, Inc., a non-profit organization that advocates for the full and equal involvement of both fit parents in a child's life. Our mission includes educating the public about the family court processes and performing court watchdog activities. As part of our work, we offer to file Rule 22 requests. Rule 22 requests allow for the recording of court proceedings with the goal of enhancing transparency and public access to the judicial process. Specifically Rule 22 states "It is the policy of Georgia's courts to promote access to and understanding of court proceedings not only by the participants in them but also by the general public and by news media who will report on the proceedings to the public."

6.

I have submitted Rule 22 requests or have attended court hearings by request several times. In the Cobb County Superior Court, I have submitted Rule 22 requests at least 5 times at the request of various individuals.

7.

Mr. McMaster asked me if I would submit a Rule 22 request for a hearing to be held on June 17, 2024.

8.

Pursuant to Rule 22 rules, on Friday, June 14, 2024, I emailed a Rule 22 request to Mr. Brett Conway, Staff Attorney for Senior Judges, and Mr. Ryan Browne, Staff Attorney for Judge Vic Reynolds. The request was for a hearing to be held on Monday, June 17, 2024 at 9:30 am in Courtroom 4200 of the Cobb County Superior Court, CAFN: 23-1-05442. [See Exhibit "A"]

9.

I had no involvement, nor prior knowledge of the case being heard on June 17, 2024, nor did I know any parties or their attorneys. I simply attended the hearing as an independent and neutral observer in an open courtroom under a Rule 22 request.

10.

To this day, I have not been introduced to the parties or their attorneys. From the record, I can state that the attorney for the Plaintiff is Ms. Katie K. Leonard. The attorney for the Defendant is Ms. Debbie C. Pelerose. Presiding judge was Senior Judge G. Grant Brantley.

11.

On June 17, 2024, I arrived at the Courthouse at approximately 9:10 am. A proceeding had already commenced in Courtroom 4200. Unsure if it was related to the hearing I had requested to attend, I did not enter the courtroom at that time.

12.

I could see into the courtroom and at approximately 9:20 am, the Judge took a recess and stated that the hearing would commence shortly.

13.

Around this time Mr. McMaster arrived at the courthouse and we entered the courtroom together. It is typical that Rule 22 requestors sit near each other as the court usually asks the requests be "pooled" and recording made by one requestor.

14.

After the Judge reentered the courtroom, the attorney on the right side of the courtroom (attorney for the Defendant) motioned to the judge that there was a Rule 22 request.

15.

The Judge then addressed the Rule 22 request made by Mr. McMaster. The Judge did not acknowledge my request.

16.

I started to speak to announce to the Court that I had also filed a Rule 22 request, but the Judge looked at me, shook his head no, and turned to directly address Mr. McMaster. I remained silent.

17.

The Judge took Mr. McMaster's brief and left the courtroom, returning about 20 minutes later. The Judge indicated that there had been a Rule 22 order for a previous hearing in this case and was considering using that wording for this request. However, he stated that the attorney for the Plaintiff, Ms. Leonard, wanted to cross-examine Mr. McMaster.

18.

Mr. McMaster took the stand. Ms. Leonard started her cross-examination. I was taken aback with Ms. Leonard's cross-examination of Mr. McMaster. Her demeanor was hostile.

19.

During Ms. Leonard's cross-examination of Mr. McMaster, I learned she was married to a Cobb County Superior Court judge. I do not know this judge, nor have I had any contact with him or been in his courtroom.

20.

Much of Ms. Leonard's line of questioning was directed at attacking Mr. McMaster focusing on his campaign for a Cobb County Superior Court judgeship when he ran against her husband in the previous election cycle in 2022.

21.

Ms. Leonard referenced me at least three times during the hearing. She pointed directly at me and called me "Murray." She referred to me as a member of Mr. McMaster's "entourage" and claimed I followed him around in his Rule 22 requests because he represented "my case," a case Mr. McMaster referenced in his brief.

22.

Mr. McMaster referenced the case, Murray v. Smith, in his brief in support of Rule 22 recordings in child custody cases. In Murray v Smith, Cobb County Superior Court judges had allowed Rule 22's in the courtroom in a child custody case.

23.

I am affiliated with Murray v Smith, but I am not a party to the case. The Murray in Murray v Smith is my son. Mr. McMaster has not and does not represent any party in Murray v Smith.

24.

I do not follow Mr. McMaster around. My work on Rule 22's started long before I ever meet Mr. McMaster.

25.

After Mr. McMaster was released from the stand, the Judge announced he was granting Ms. Leonard's objection to the Rule 22.

26.

The Judge then asked Mr. McMaster to turn his device over to court personnel to ensure he was not recording. Mr. McMaster walked toward the court personnel but announced he would be leaving the courtroom. He returned to where he had been sitting near me to pick up his briefcase.

27.

I was about to ask Mr. McMaster if I should stand up and announce my Rule 22 request but the Judge stopped me from speaking and called for a short recess.

28.

The only way I can describe the environment in the courtroom towards Mr. McMaster, and indirectly towards myself, was hostile and threatening. The courtroom did not reflect the integrity and fairness that I was taught our judicial system is supposed to uphold. I felt unsafe in the courtroom. I left the courtroom with Mr. McMaster.

29.

After leaving the courtroom, Mr. McMaster and I sat on a bench in the hallway across from the men's restroom. As were sitting there, Ms. Leonard, her client and another woman who had been seated at the table in the courtroom with them, came around the corner. I caught Ms.

Leonard's eye. Ms. Leonard and I locked eyes until she had to look forward. At that point, she said to me, *you better watch out who you associate with.* I responded with, "Ma'am, I don't believe what you said is appropriate." She then repeated, *you better watch out.* Her client then turned around and went into the men's restroom, and the two women walked on towards the women's restroom.

30.

I considered returning to the courtroom to observe, but I did not trust the hostility I had observed would subside. Consequently, I decided to leave the courthouse.

Further, Affiant sayth naught.

This is the 24th day of June, 2024.

______________________

Printed Name: Mary Murray

Sworn and subscribed before me

This 24 day of June, 2024.

______________________

Notary Public

My commission Expires 11/17/25

DALE MEADE NOTARY PUBLIC GEORGIA FORSYTH COUNTY EXPIRES November 17, 2025

**IN THE SUPERIOR COURT OF**
**COBB COUNTY STATE OF GEORGIA**

JOHN LOWE,

Plaintiff,

v.

LAURA LOWE,

Defendant.

CIVIL ACTION: 23105442

Related Case: CAFN: 24100209

**AFFIDAVIT OF MARY MURRAY**

**PERSONALLY APPEARED** before the undersigned attesting officer authorized by law to administer oaths, Mary Murray, who after first being duly sworn, on oath deposes and says:

1.

I, Mary Murray, have personal knowledge of the facts and circumstances contained in this Affidavit.

2.

My name is Mary Murray and I am a citizen of the United States and a resident of Georgia. I am over the age of eighteen **(18)** and I am competent to testify to the facts in this affidavit. I am doing so freely and voluntarily and in the absence of any duress or legal impediment.

3.

I am filing this Affidavit in support of the Motion for Reconsideration of Order on USCR 22 in related cases CFN: 23-1-05442 and CFN: 24-1-00209.

4.

I am a Distinguished Professor of Information Systems with an international reputation for research in the areas of digital literacy and emerging technologies. I hold a Ph.D. in information systems and am a highly trained researcher. I have more than 40 years of experience and hold an extensive publication list of peer-reviewed scholarly publications. I hold the position of senior [officially called 'full'] professor at Kennesaw State University in the Department of Information Systems and Security housed in the Coles College of Business.

5.

I serve on the Board of Equally Present, Inc., a non-profit organization that advocates for the full and equal involvement of both fit parents in a child's life. Our mission includes educating the public about the family court processes and performing court watchdog activities. As part of our work, we offer to file Rule 22 requests. Rule 22 requests allow for the recording of court proceedings with the goal of enhancing transparency and public access to the judicial process. Specifically Rule 22 states "It is the policy of Georgia's courts to promote access to and understanding of court proceedings not only by the participants in them but also by the general public and by news media who will report on the proceedings to the public." It was on behalf of Equally Present that I attended the hearing on August 2, 2024.

6.

I have submitted Rule 22 requests or attended court hearings by request on several occasions. In Cobb County Superior Court alone, I have submitted Rule 22 requests at least six times. One such request was for a hearing held on June 17, 2024, in the present case. Although I attended the hearing on June 17, 2024, the Court did not acknowledge my Rule 22

request. I chose not to bring it up due to the hostility directed towards Mr. McMaster, who had also filed a Rule 22 request for that hearing.

7.

Judge Brantley denied Mr. McMaster's Rule 22 request for the June 17, 2024 hearing and issued an order titled "Order Denying Rule 22 Request of Spectator Matthew McMaster." The order did not address Rule 22 requests by anyone else or for future hearings.

8.

Pursuant to USCR 22, representing Equally Present, Inc. on July 31, 2024, at 11:00 p.m., I emailed a Rule 22 request to Mr. Brett Conway, Staff Attorney for Senior Judges of Cobb County Superior Court. The request was for a hearing scheduled to commence at 9:30 a.m. on August 2, 2024, in the case of Lowe v. Lowe [CFN: 23-1-05442]. I specifically requested permission to record only the portion of the proceedings related to the Rule 22 requests and the request for an award of attorney fees against a non-party Rule 22 requestor (see Exhibit "1" – email dated July 31, 2024 from Mary Murray to Brett Conway and Rule 22 request for CFN: 23-1-05442).

> USCR Rule 22 (F) (2) *Time limit for submitting a request*, states: The person or organization must submit the request sufficiently in advance of the proceeding – at least 24 hours where practicable under the circumstances – to allow the judge to consider it in a timely manner.

9.

Noticing there were two related case numbers listed for the hearing in the matter (CFN: 23-1-05442 and CFN: 24-1-00209), I emailed an amended request at 8:14 am on August 1, 2024 with separate Rule 22 Requests citing both case numbers. (See Exhibit "2" – email dated August 1, 2024 from Mary Murray to Brett Conway).

10.

On Friday, August 2, 2024, at approximately 8:50 a.m., I arrived at the Courthouse and officially filed Notices of the Rule 22 requests - one into each related case. Although I initially planned to e-file the Notices, I decided to file them in person due to the delay between e-filing and acceptance by the Clerk of the Court given the PeachCourt conversion process.

11.

At approximately 9:20 a.m., I entered Courtroom 4200 where the hearing was scheduled to take place. The attorney for the Defendant was already in the courtroom and shortly thereafter, the Plaintiff's attorney, the Plaintiff, another woman seated at the table next to the Plaintiff, a Court Reporter, a Bailiff and a deputy came into the courtroom.

12.

Around 9:30 a.m., the presiding judge, Judge G. Grant Brantley (hereinafter "Judge Brantley"), entered the courtroom. Immediately, before the judge had a chance to say anything, the attorney for the Plaintiff, Ms. Katie Leonard, requested a sidebar. Both attorneys approached the bench. The judge then instructed the bailiff to open the door to a backroom for the attorneys to enter. The judge left the courtroom with the attorneys.

13.

Judge Brantley did not at this time, or any time in the open courtroom, to my knowledge, announce the case name, number, and or the nature of the proceedings. I was waiting for Judge Brantley to do so given the confusion between the two different case numbers.

14.

While the attorneys and the judge were in the backroom, a second deputy entered the courtroom through the door the attorneys had just exited through. He went to the back of the courtroom and sat next to the other deputy who was already in the courtroom.

15.

At 9:34 a.m., the attorneys returned to the courtroom followed by Judge Brantley who entered through a different door. I immediately stood up and remained silent until Judge Brantley acknowledged me. At that point, I began to say, "I have a Rule 22," but the judge interjected, asking me to, "Speak up, I can't hear you." I again started to say, "I have a Rule 22 request," when Judge Brantley interrupted me, stating, "Too late, too bad" and that he would not address the Rule 22 Request.

16.

When I began to respond by saying, "I filed the request 24 hours ago," Judge Brantley interrupted me again and instructed the Deputy to remove me from the courtroom if I said another word. The deputies were both seated and did not get up. I sat down.

17.

At no time did I ever raise my voice. In fact, the tone of the Judge was threatening, hostile, and offensive, so my response was very reserved.

18.

Judge Brantley stated that he had been driving back from a conference the night before and did not have time to read the Rule 22 request.

19.

In my experience, every other judge to whom I have made a Rule 22 request has addressed me in the courtroom to review my Rule 22 request, even if they had not previously seen a copy of the request. Had I been allowed to speak at this hearing, I would have explained exactly what I was requesting to record and provided Judge Brantley with a paper copy of the Rule 22 request.

20.

After I sat down, Ms. Leonard turned and faced me and said something to the effect that I was required to notify counsel and the parties had not been notified of the Rule 22 request. I responded to Ms. Leonard that this is not what the rules state. The Judge told Ms. Leonard to stop addressing the spectator in the gallery. I have no knowledge of whether Ms. Leonard, or anyone else was notified of the Rule 22 request.

> USCR Rule 22 (F)(1) *Submission of a Request*, states, "The person or organization must submit the request to the judge or to an officer of the court designated to receive requests under this rule." USCR Rule 22 (F) (3) *Notice and Hearing*, states: "The court will notify the parties of its receipt of a request for recording."

21.

Judge Brantley took no further action to address the Rule 22 request.

> USCR Rule 22 (F) (3) *Notice and Hearing*, states, "...The judge will promptly hold a hearing if the judge intends to deny the request or a portion of the request, or if a party, witness, or alleged victim objects to a request. The hearing under this paragraph shall be part of the official record of the proceeding."

22.

I remained in the Courtroom as Judge Brantley announced he would address Ms. Leonard's request for an award of attorney fees against Mr. McMaster, a non-party, for his filing of a Rule 22 request for the June 17, 2024 hearing. The attorney fee hearing did not

go forward given that Mr. McMaster had filed an appeal of the Rule 22 order issued by the court and the appeal stayed the request for attorney fees.

23.

Judge Brantley stated he was unaware of the appeal. Ms. Leonard stated that no one had been notified of the appeal as this was how the *Rule 22 entourage worked.*

24.

Ms. Leonard and a woman sitting near her at the same table started to laugh. Ms. Leonard said something to the effect that appeals of Rule 22 rulings are not allowed.

> USCR 22 (G) *Denial or Limitation of Recording*, states, "A properly submitted request for recording should generally be approved, but a judge may deny or limit the request as provided in this paragraph. A judge's decision on a request, or on an objection to a request, is reviewable as provided by law."

25.

Ms. Leonard proceeded to say, "Apparently they let anyone be a lawyer." Followed by, "Mrs. Murray, go ahead and write this down. I'm sure it will appear in an affidavit."

26.

The court then proceeded to address other issues not related to Rule 22. I left the courtroom, as my Rule 22 request was solely to cover the portion of the proceedings related to Rule 22 issues.

27.

I have never met, nor had a conversation with any party to this case or with the attorney for the Plaintiff, Ms. Leonard, or the attorney for the Defendant, Ms. Pelorose. With the exception of my husband, Dr. David Murray, who accompanied me to the hearing, I do not know, nor have I ever met any person who was in the courtroom on

August 2, 2024. At no time, while I was in the courtroom, was I ever asked, by anyone, about any relationship I might have with Mr. McMaster. I am not a colleague of Mr McMaster. I am not an attorney.

28.

Upon exiting the courtroom, I immediately proceeded to a bench at the end of the hallway, sat down and recorded an account of the events that had just transpired.

Further, Affiant sayth naught.

This is the 6th day of August, 2024.

Mary Murray

Sworn and subscribed before me

This 6 day of August, 2024.

KIMBERLY LOGAN
GEORGIA
PAULDING COUNTY